UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELVIS LOPEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-6348** |
| **HARVEY GULF INTERNATIONAL MARINE, LLC** | **SECTION "L" (3)** |

**ORDER& REASONS**

Before the Court is Defendant Harvey Gulf International Marine, LLC's ("Harvey Gulf") Motion for Partial Summary Judgment on Maintenance and Cure. R. Doc. 15. Plaintiff Elvis Lopez ("Lopez") opposes the motion. R. Doc. 16. Harvey Gulf replied, R. Doc. 18, and Lopez filed a supplemental memo, R. Doc. 22. After considering the record, the parties' briefing, and applicable law, the Court now rules as follows.

I. BACKGROUND

This case arises from an incident that occurred aboard the M/V Harvey Intervention when Lopez was working for Harvey Gulf. R. Doc. 1 at 2. Lopez filed suit in this Court pursuant to the Jones Act. *Id.* at 1; 28 U.S.C. § 1333; 46 U.S.C. § 30104.

On August 2, 2023, Lopez was offloading cargo from the vessel when he alleges that he tripped on the vessel's stairs and injured himself. R. Doc. 1 at 3. He contends that the accident occurred because the stairs were not braced and secured to the vessel. *Id.* As a result of his fall, Lopez tore the medial meniscus in his right knee and had to undergo surgery with the company doctor. *Id.* He also states that Harvey Gulf did not perform neck and back MRIs on him despite his complaints of pain in those areas. *Id.* According to Lopez, Harvey Gulf released him to return to work without obtaining a fit for duty release from the doctor. *Id.*

1

Lopez states three causes of action in this case: (1) Jones Act negligence; and (2) general maritime negligence and unseaworthiness and (3) a claim for maintenance and cure. *Id.* at 3-4. First, Lopez contends that Harvey Gulf breached its duty under the Jones Act by failing to provide a safe place for him to work. *Id.* at 4. Specifically, Lopez states that Harvey Gulf did not provide safe and sufficient gear, properly secured stairways, proper safety equipment, and training, among other missteps. *Id.* Lopez avers that these oversights were the proximate cause of his injuries. *Id.*

Second, Lopez argues that Harvey Gulf is liable to him for general maritime negligence and unseaworthiness. *Id.* Lopez contends that Harvey Gulf breached its duties in several ways, including, but not limited to failing to maintain a safe place to work, failing to shut down its operations due to unsafe conditions, failing to properly supervise its employees' work, and failing to adequately train its crew. *Id.* at 5. In addition, Lopez asserts a claim for maintenance and cure. *Id*. at 6.

In response, Harvey Gulf generally denies Lopez's allegations. R. Doc. 9. Additionally, Harvey Gulf asserts several affirmative defenses, including, but not limited to lack of control, contributory negligence, lack of proximate cause, force majeure, preexisting medical conditions, failure to mitigate damages, and open and obvious condition. *Id.* at 1-13.

II.     **PRESENT MOTION**

Harvey Gulf filed a motion for partial summary judgment urging this Court to dismiss Lopez's claims for maintenance and cure. R. Doc. 15. It argues that Lopez did not disclose prior medical issues with his right knee, neck, and back and therefore he is precluded from receiving maintenance and cure under Fifth Circuit precedent. R. Doc. 15-5 at 1 (*citing McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968)). First, Harvey Gulf contends that Mr. Lopez intentionally concealed these injuries during his hiring process because he filled out a medical

2

questionnaire in which he falsely denied ever having neck, back and knee issues or undergoing various tests such as MRIs and CT scans. R. Doc. 15-5 at 12-14. Second, it argues that these injuries would have been material to its decision to hire Lopez. *Id.* at 15. Finally, it argues that there is a causal relationship between Lopez's prior injuries and those that form the basis of his present claim. *Id.* at 16. It notes that his prior injuries were to the neck, back, and right knee, which are the same areas to which he alleges injury in the present case. *Id.* In addition to its request that Lopez not receive any further maintenance and cure benefits, Harvey Gulf seeks a credit against any damages award Lopez might receive reimbursing it for the maintenance and cure benefits it has paid thus far. *Id* .at 16-17.

In opposition, Lopez argues that his non-disclosure of prior medical issues does not preclude him from receiving maintenance and cure. R. Doc. 16 at 1-2. First, he contends that his non-disclosure was not intentional, as he misunderstood the questionnaire about his medical background which he filled out at hiring. R. Doc. 16 at 5. He contends that the questionnaire's use of the term "in the past" was confusing, and he believed he was only being asked about present conditions. *Id.* Second, he argues that Harvey Gulf would not have passed on his employment even if they had known about his prior medical issues because he had a good employment record at Harvey Gulf. *Id.* at 6. Finally, he avers that there is no causal connection between his past injuries and the injuries underlying this suit. *Id.*

### III.  APPLICABLE LAW

#### a. Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*,

113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted). If the nonmovant fails to respond to the motion, a court may not "enter a 'default' summary judgment" for the movant, however a court is permitted "to accept [movant's] evidence as undisputed." *Preston v. Hertz Corp.*, 2003 WL 22938921, at *1 (N.D. Tex. Nov. 26, 2003); *Thorn v. RaceTrac Petroleum Inc.*, 2022 WL 965095, at *1 (5th Cir. Mar. 30, 2022) ("After [plaintiff] failed to file a timely response, the district court was entitled to accept as undisputed the facts offered in support of [defendant's] summary-judgment motion.").

    b. **Maintenance and Cure**

Under general maritime law, a shipowner has a duty to provide maintenance and cure to a seaman who becomes ill or injured while in the service of the ship. *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979); *Lovell v. Master Braxton, LLC*, No. 15-3978, 2016 WL 6819043, at *5 (E.D. La. Nov. 18, 2016). "Cure" is the payment of medical services until the seaman reaches maximum medical improvement. *Pelotto*, 604 F.2d at 400. "Maintenance" provides a seaman with "food and lodging of the kind and quality he would have received aboard the ship." *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002). "To establish a claim for maintenance and cure, a seaman need only show that his injuries occurred while in the service of the vessel." *Lovell*, No. 15-3978, 2016 WL 6819043, at *5; *Boudreaux*, 280 F.3d at 468.

### c. The *McCorpen* Defense

Recovery for maintenance and cure is permitted for injuries or illnesses that predate the seaman's employment "unless that seaman knowingly or fraudulently concealed [their] condition from the vessel owner." *Jauch v. Nautical Services, Inc.*, 470 F.3d 207, 212 (5th Cir. 2006). An employer may rely on the legal defense that the seaman willfully concealed a preexisting medical condition to deny a maintenance and cure claim. *McCorpen v. Central Gulf S. S. Corp.,* 396 F.2d 547, 548-49 (5th Cir. 1968). An employer successfully asserts a *McCorpen* defense and is relieved from its duty to pay maintenance and cure if it can prove that: (1) the plaintiff knowingly concealed or intentionally misrepresents a medical condition; (2) the medical condition was material to the employer's decision to hire the plaintiff; and (3) there is a causal link between the pre-existing condition and the injury at issue. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005).

## IV. DISCUSSION

Here, Harvey Gulf asserts the *McCorpen* defense, arguing that Mr. Lopez's non-disclosure of certain prior injuries and medical procedures on his employment questionnaire prohibits him from recovering maintenance and cure.

### a. Mr. Lopez Knowingly Concealed Prior Medical Conditions From Harvey Gulf.

The first element of the *McCorpen* defense is that the plaintiff knowingly or intentionally concealed a medical condition from their employer. 396 F.2d at 548. In *Brown v. Parker Drilling Offshore Corp.*, the Fifth Circuit explained that "[t]he 'intentional concealment' element does not require a finding of subjective intent" and that "[f]ailure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the 'intentional concealment' requirement." *Id.* at 173-74 (quoting *Vitcovich v. Ocean Rover O.N.*,

5

No. 94-35047, 1997 WL 21205, at *3 (9th Cir. Jan. 14, 1997)). Similarly, this Court, applying *McCorpen*, has held that failing "to truthfully answer medical questions or expound upon a condition when requested by the employer in a medical questionnaire test can forfeit a seaman's right to maintenance and cure." *Wimberly v. Harvey Gulf International Marine*, LLC, 126 F. Supp. 3d 725, 732 (E.D. La. 2015) (citing *Lett v. Omega Protein, Inc.*, 487 F. App'x 839, 848-49 (5th Cir. 2012)). Because the question of knowing concealment is an objective inquiry, not a credibility determination, this question is properly decided on summary judgment. *See Brown*, 410 F.3d at 174-75.

Here, Mr. Lopez objectively concealed his prior injuries. The questionnaire Harvey Gulf administered to Mr. Lopez during the hiring process was plainly designed to elicit information about prior back, knee, and joint issues. R. Doc. 15-10. For example, it asked, "Have you ever been diagnosed with or had any of the following medical conditions?" such as "back trouble," "knee injuries" and "neck trouble." *Id.* at 2. It separately asks, "Have you ever been seen by a Chiropractor, Doctor, or other healthcare provider for treatment to your back, neck, or spine?" *Id.* at 2. These questions are clearly worded, and the Court finds that the questionnaire was "obviously designed to elicit" information about prior knee, back, and neck injuries. *Brown*, 410 F.3d at 174. Mr. Lopez answered "no" as to all of these questions despite having an extensive history of neck, back and knee injuries spanning over twenty years and resulting from at least two prior work accidents.[1] Furthermore, the questionnaire clearly asked, "Have you ever had any of the following

---

[1] *See* R. Doc 15-7 and 15-8 (a past questionnaire dated November 8, 2000 where Mr. Lopez reported a "trick knee"); R. Doc. 15-11 (medical records diagnosing Mr. Lopez with "right knee pain/trauma" in 2014); R. Doc. 15-12 and 15-13 (medical records from 2016 where Mr. Lopez reported that had experienced a work accident in which he fell "onto his back" after which he had "progressive issues in his lumbar spine and cervical spine" and "a popping with his neck if he flexes or extends his head"); R. Doc. 15-14 (medical records from 2017 explaining that Mr. Lopez's work van was rear-ended, after which he experienced "a headache since the time of the accident and neck pain and back pain" described as a "burning sensation.").

Plaintiff contends that he disclosed his tricked knee to Harvey Gulf and cites Plaintiff's Exhibit 6. R. Doc. 16 at 5. However, this exhibit is a prior employment questionnaire administered by Mr. Lopez's former employer,

tests?" including "back or neck X-ray," "other X-ray" "MRI Scan" and "CT Scan." R. Doc. 15-10 at 3. Mr. Lopez marked "no" for each of these questions. *Id.* However, Harvey Gulf submits evidence showing that he had, if fact, undergone at least five of these tests at the time.[2] The Court therefore finds that Mr. Lopez intentionally concealed this medical history from Harvey Gulf.

### b. The Information Mr. Lopez Did Not Disclose Would Have Been Material to Harvey Gulf's Hiring Decision.

Courts have construed the *McCorpen* materiality element broadly and have explained that "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175.

Here, prior knee, neck, and back injuries are rationally related to Lopez's ability to do the job of a seaman. Harvey Gulf provides an affidavit of its Executive Vice President confirming that such injuries would, in fact, have mattered to their hiring decision. R. Doc. 15-18 at 3. Furthermore, the affidavit describes that the duties of a seaman include "performing manual labor duties aboard vessels" and "loading and unloading cargo from decks." R. Doc. 15-18 at 2. Lopez himself alleges in his complaint that his present injury occurred when he tripped while "off-loading" a vessel. R. Doc. 1 at 3. Prior back, neck, and knee injuries are thus rationally related to a person's ability to perform manual labor and load cargo.

Lopez contends that the materiality factor is not met because he performed well in his job. R. Doc. 16 at 6. However, Lopez's post-hire performance is simply not relevant to whether Harvey

---

Job Corps, and dated to November 8, 2000. Mr. Lopez's employment questionnaire submitted to Harvey Gulf does not disclose the tricked knee. R. Doc. 15-10.

[2] *See* R. Doc. 15-11 (right knee X-ray taken in 2014); R. Doc. 15-13 (three MRIs of the spine taken on August 31, 2016); R. Doc. 15-14 (CT Scan of the head taken on December 13, 2017).

Gulf would have made the same hiring decision. Accordingly, Harvey Gulf has established this element.

### c. Mr. Lopez's Prior Undisclosed Injuries are Causally Connected to His Present Injuries.

Last, courts require a "connection between the withheld information and the injury which is eventually sustained" to show the causation element. *Brown*, 410 F.3d at 175-76. While the injury need not be identical, courts have found that an injury to the same body part is sufficient to show a causal link. *Id.* at 176 (finding that a history of lumbar injuries were causally connected to the plaintiff's back injury); *Weatherford v. Nabors Offshore Corp.*, No. CIV.A. 03-0478, 2004 WL 414948, at *3 (E.D. La. Mar. 3, 2004) (finding a causal link where the past injury was to plaintiff's lower back and present injury was also to his back); *Matter of L.S.K. Towing, Inc.*, No. CIV. A. 94-4134, 1995 WL 350039, at *2 (E.D. La. June 6, 1995) (holding that "the causal link seems clear" where "plaintiff's prior injury was also to the left knee"). Here, Mr. Lopez's prior injuries were to the same three areas of the body as his present injuries: the right knee, neck, and back.[3] Accordingly, this element is met.

### d. Harvey Gulf is Entitled to Offset of Previously Paid Maintenance and Cure Benefits Should Mr. Lopez Make a Damages Recovery.

The Fifth Circuit has held that an employer who raises a successful *McCorpen* defense cannot bring an independent suit for affirmative recovery for previously made maintenance and cure damages. *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 728 (5th Cir. 2013).

---

[3] *See* R. Docs. 15-7, 15-8, and 15-11 (injuries to the right knee); R. Docs. 15-13 and 15-14 (injuries to neck); R. Doc. 15-13 and 15-14 (injuries to back). Plaintiff's complaint mentions three areas of the body: the "right knee," "neck" and "back." R. Doc. 1 at 3.

However, "the payments can be recovered [by] offset against the seaman's damages award." *Id*. According, Harvey Gulf will be entitled to an offset in the amount of paid maintenance and cure benefits should Mr. Lopez recover any damages.

New Orleans, Louisiana, this 1st day of July, 2024.

                                              HONORABLE ELDON E. FALLON